NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12137

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL NO. 129
BENEFIT FUND[1]  vs.  JOSEPH M. TUCCI & others[2] (and eight
consolidated cases[3]).


Suffolk.     November 7, 2016. - March 6, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.


Corporation, Stockholder's derivative suit, Merger, Sale of
     assets, Valuation of stock, Board of directors.  Practice,
     Civil, Class action, Dismissal.

---

[1] Individually and on behalf of all others similarly
situated.

[2] Joseph M. Tucci, Jose E. Almeida, Michael W. Brown, Donald
J. Carty, Randolph L. Cowen, James S. Distasio, John R. Egan,
William D. Green, Edmund F. Kelly, Jami Miscik, Paul Sagan,
Laura J. Sen, EMC Corporation, Denali Holding Inc., Dell Inc.,
and Universal Acquisition Co.

[3] Breffni Barrett vs. Joseph M. Tucci & others; City of
Miami Police Relief and Pension Fund vs. Joseph M. Tucci &
others; Karl Graulich IRA & others vs. Joseph M. Tucci & others;
Lawrence Frank Vassallo vs. EMC Corporation & others; Howard
Lasker vs. EMC Corporation & others; Local Union No. 373 U.A.
Pension Plan vs. EMC Corporation & others; City of Lakeland
Employees' Pension and Retirement Fund vs. Joseph M. Tucci &
others; Su Ma vs. Joseph M. Tucci & others.

Civil actions commenced in the Superior Court Department on October 15, October 16, October 19, October 20, October 23, October 28, and October 29, 2015.

After consolidation, a motion to dismiss was heard by Edward P. Leibensperger, J.

The Supreme Judicial Court granted an application for direct appellate review.

Jason M. Leviton (Michael G. Capeci, of New York, & Joel A. Fleming also present) for International Brotherhood of Electrical Workers Local No. 129 Benefit Fund & others.
Thomas J. Dougherty (Kurt Wm. Hemr also present) for Joseph M. Tucci & others.
John Pagliaro & Martin J. Newhouse, for New England Legal Foundation, amicus curiae, submitted a brief.
Ian D. Roffman & Matthew J. Connolly, for Associated Industries of Massachusetts, amicus curiae, submitted a brief.

BOTSFORD, J. In these consolidated cases, shareholders of a publicly traded corporation claim that a merger transaction proposed by the board of directors will result in the effective sale of the corporation for an inadequate price. The question we consider is whether they may bring that claim directly against the board members, or must bring it as a derivative claim on behalf of the corporation. We answer that the claim must be brought derivatively.[4]

---

[4] We acknowledge the amicus briefs submitted by Associated Industries of Massachusetts and New England Legal Foundation.

Background.  The plaintiffs appeal from the dismissal of their first amended class action complaint (complaint)[5] alleging breaches of fiduciary duty by the board of directors of EMC Corporation (EMC) arising from a merger between EMC and Denali Holding Inc. and Dell Inc. (collectively, Dell).  At the time that they commenced these actions, the plaintiffs were shareholders of EMC; the proposed merger would result in the shareholders receiving a cash payment in exchange for their EMC stock.  The plaintiffs' complaint alleges that they bring the actions on behalf of a class consisting of "all other shareholders of EMC . . . who are or will be deprived of the opportunity to maximize the value of their shares of EMC as a result of the [directors'] breaches of fiduciary duty and other misconduct."  The plaintiffs assert that the members of EMC's board of directors violated their fiduciary duties, allegedly owed to both EMC and the shareholders, by "(i) failing to take steps to maximize the value of EMC stock; and (ii) agreeing to unreasonably preclusive deal protection provisions, thereby hindering any potential bid that may have been superior" to the sale of EMC to Dell.

---

[5] The first amended class action complaint (complaint) was filed by the International Brotherhood of Electrical Workers Local No. 129 Benefit Fund (IBEW).  The actions brought by the other plaintiffs were consolidated with IBEW's action prior to the dismissal of the complaint.

We recite the pertinent facts alleged in the complaint, taking as true its factual allegations and drawing all reasonable inferences in the plaintiffs' favor. Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 407 (1995). EMC is a Massachusetts corporation providing information technology products and services in a global market, with its principal place of business in Hopkinton. Its stock is traded on the NASDAQ stock exchange.

EMC has a federation structure; that is, it acts as parent company to numerous related but independently functioning businesses. The defendant Joseph M. Tucci, the long-time chief executive officer of EMC and the architect of this federated structure, wanted to keep the federation of companies together. This caused EMC's shares to trade at a "conglomerate discount" because investors valued the large company less than they would its individual components. In the fall of 2014, an investor in EMC, Elliott Management (Elliott), began advocating for EMC to sell off the most valuable subsidiaries of the federation to provide maximum value to EMC's shareholders; the individual sales of some or all of EMC's subsidiaries would yield higher value per share for EMC shareholders than would sale of the company as a whole. Elliott argued for an alternative to the conglomerate discount in which VMware, one of EMC's most valuable subsidiaries, would be sold separately and EMC would

inquire into acquisition for the remaining components. Tucci, fearing that Elliott would prevail in breaking up the EMC federation, reached an agreement with Elliott in January, 2015, by which Elliott was permitted to participate in the appointment of new directors but agreed to a limit on stock it could buy for a period of time. Tucci and EMC used this period to strategize the sale of the company to Dell. Tucci had scheduled his retirement several times, but continually extended the date. He negotiated the sale of EMC and all its subsidiaries to Dell via his long-time friend and business associate, Michael Dell, in order to keep the company's federated structure intact. Tucci is to receive approximately $27 million in "change-in-control" benefits as a result of selling the entire company, a sum that Tucci would not have received if he had retired as planned. The proposed transaction also permits Dell to shelter significant tax liability and to retain the value locked in the subsidiaries through a potential break-up of the EMC federation in the future.

In October, 2015, Tucci announced that Dell agreed to acquire all of EMC for approximately $67 billion.[6] Tucci used his influence over the other board members to convince them to approve the merger. The transaction was unanimously approved by

---

[6] There appears to be a discrepancy in the complaint as to the exact value of the transaction. Both $67 billion and $64 billion are figures used to describe its value.

the board and announced on October 12, 2015.  In approving the proposed merger, the board also agreed to termination fees that further dissuaded competing companies from placing a higher bid on EMC than Dell:  the merger agreement between EMC and Dell included a $2 billion termination fee that any higher bidder would have to pay before it could top the Dell bid.

Under the proposed transaction's terms, EMC shareholders are to receive $24.05 in cash per share and an estimated 0.111 shares of "tracking stock" of VMware; the tracking stock does not provide the same rights that shares in VMware common stock provide.  According to Elliott, selling EMC's interest in VMware separately would have yielded a total value for EMC's shareholders of over forty dollars per share.  In addition, just before the transaction was announced, VMware announced a new business venture with an expected revenue of several hundreds of millions of dollars in 2016.  This value would have been realized by EMC shareholders, but as a result of the transaction will be realized by Dell.

The plaintiff International Brotherhood of Electrical Workers Local No. 129 Benefit Fund (IBEW) filed a complaint on October 15, 2015, as a direct action against members of EMC's board of directors in their individual capacities.  The defendants moved to dismiss the complaint for failure to state a claim pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754

(1974), after which eight other actions were consolidated with IBEW's action.  After a hearing, the judge allowed the motion, ruling that the board owed no fiduciary duty directly to the shareholders in this case and that the action was necessarily derivative because any alleged harm to shareholders was not distinct from harm to the corporation.  He reasoned that there were no allegations that any EMC shareholder would receive more per share in this proposed transaction than any other shareholder, nor were there allegations that any one shareholder or group of shareholders controlled the company to assure a positive vote on the transaction.  A judgment of dismissal entered on December 24, 2015.  The plaintiffs timely filed an appeal, and we subsequently granted the plaintiffs' application for direct appellate review.[7]

Discussion.  The parties agree that EMC is a large, publicly traded Massachusetts corporation, and that the corporate statute under which it operates is the Massachusetts Business Corporation Act, G. L. c. 156D (act).  They also agree that the plaintiffs' legal claim is one for breach of fiduciary

---

[7] The defendants inform us in their brief that at a special shareholder meeting held on July 19, 2016, ninety-eight per cent of voting EMC shareholders voted to approve the merger transaction.  See Form 8-K submitted by EMC Corporation to United States Securities and Exchange Commission (Sept. 9, 2016), available at https://www.sec.gov/Archives/edgar/data/790070/000119312516706576/d258881d8k.htm [https://perma.cc/8KTL-XAGW].

duty by the members of EMC's board of directors and particularly by Tucci for failing to take steps to maximize the value of the shareholders' EMC stock in arranging for the merger transaction. As indicated at the outset, the principal question raised is whether the plaintiffs, as shareholders who challenge the fairness or validity of a proposed merger on the ground that it will effectively result in the sale of EMC and for them a loss of personal property -- their EMC stock holdings -- for an inadequate price, must bring their claim against the directors as a derivative action on behalf of the corporation, or may bring it directly on their own behalf. We review the judge's allowance of the motion to dismiss de novo. Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011).

1. Derivative actions and claims. "The derivative form of action permits an individual shareholder to bring 'suit to enforce a corporate cause of action against officers, directors, and third parties.' . . . Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers'" (emphasis in original; citations omitted). Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991).

"The derivative action seeks, after management has failed

or refused to act, to redress a wrong to a corporation or association (usually by a few of its shareholders or members) . . . . [T]he wrong underlying a derivative action is <u>indirect</u>, at least as to the shareholders. It adversely affects them merely as they are the owners of the corporate stock; only the corporation itself suffers the direct wrong . . . . [A] complaint alleging mismanagement or wrongdoing on the part of corporate officers or directors normally states a claim of wrong to the corporation: the action, therefore, is properly derivative" (emphasis in original; citation omitted).

<u>Jackson</u> v. <u>Stuhlfire</u>, 28 Mass. App. Ct. 924, 925 (1990). See <u>Bessette</u> v. <u>Bessette</u>, 385 Mass. 806, 809-810 (1982) (plaintiff minority stockholders' claim that majority stockholder and director was paid excessive salary qualifies as wrong to corporation that plaintiffs were required to pursue as derivative claim; plaintiffs' direct action against majority stockholder properly dismissed). To determine whether a claim belongs to the corporation, and is therefore derivative, "a court must inquire whether the shareholders' injury is distinct from the injury suffered generally by the shareholders as owners of corporate stock" (citation omitted). <u>Stegall</u> v. <u>Ladner</u>, 394 F. Supp. 2d 358, 364 (D. Mass. 2005) (applying Massachusetts law).

2. <u>Direct versus derivative</u>. As the plaintiffs recognize, whether a claim asserted by stockholders of a Massachusetts corporation is one that may be pursued directly by them against the corporation's directors or must be pursued derivatively depends on whether the harm they claim to have suffered resulted

from a breach of duty owed directly to them, or whether the harm claimed was derivative of a breach of duty owed to the corporation.  See Bessette, 385 Mass. at 809.  See also Stegall, 394 F. Supp. 2d at 364, quoting Branch vs. Ernst & Young U.S., U.S. Dist. Ct., No. Civ. A. 93-10024-RGS (D. Mass. Dec. 22, 1995).  The plaintiffs also recognize that the act's provisions defining the standards of conduct applicable to corporate directors governs, or at least has a direct bearing on, the determination whether corporate directors owe a fiduciary duty directly to the corporation's shareholders.  We turn to the act.

3.  The act.  Section 8.30 of the act defines the standards of conduct a director of a Massachusetts corporation is required to follow.  The section provides in relevant part:

> "(a) A director shall discharge his duties as a director, including his duties as a member of a committee:

> "(1) in good faith;

> "(2) with the care that a person in a like position would reasonably believe appropriate under similar circumstances; and

> "(3) in a manner the director reasonably believes to be in the best interests of the corporation.  In determining what the director reasonably believes to be in the best interests of the corporation, a director may consider the interests of the corporation's employees, suppliers, creditors and customers, the economy of the state, the region and the nation, community and societal considerations, and the long-term and short-term interests of the corporation and its shareholders, including the possibility that these interests may be best served by the continued independence of the corporation.

            ". . .

            "(c) A director is not liable for any action taken as
       a director, or any failure to take any action, if he
       performed the duties of his office in compliance with this
       section."

G. L. c. 156D, § 8.30.

       The plaintiffs argue that the provisions of § 8.30 (a)

demonstrate that corporate directors owe a fiduciary duty to

shareholders, but the logic and thread of their argument are

difficult to follow.  They claim that the standards set out in

§ 8.30 (a) (1)-(3) are "conjunctive," and directors are required

to "satisfy all three prongs," but then assert that in fact the

three "prongs" are separate.  They reason that although § 8.30

(a) (3) speaks directly about a duty owed by a director to the

corporation, § 8.30 (a) (1) as well as § 8.30 (a) (2) --

presumably by not explicitly referencing a duty owed to the

corporation -- "delineate duties owed to both the corporation

and its shareholders" (emphasis in original).

       The plain words of the statute contradict the plaintiffs'

interpretation.  By its terms, § 8.30 (a) sets forth the three

components of a unitary standard that is to govern a corporate

director in performing all the duties and actions he or she

performs as a director.[8]  That is, the plaintiffs' statement that

_____

       [8] The comment to G. L. c. 156D, § 8.30, supports our
reading.  The comment states in relevant part:  "[Section 8.30]
sets forth the standard by focusing on the manner in which the

§ 8.30 (a) (1) through (a) (3) are to be read conjunctively is correct: every duty and action by a director as director is to be undertaken (1) in good faith, (2) with an appropriate level of care, and (3) "in a manner the director reasonably believes to be in the best interests of the corporation." Moreover, although § 8.30 (a) (3) makes clear that a director may consider, among other interests, "the long-term and short-term interests of the corporation and its shareholders" (emphasis added), it first specifies that the director may do so only in the context of "determining what the director reasonably believes to be in the best interests of the corporation." Particularly in light of this specification, the plaintiffs' proposed interpretation of § 8.30 (a) as implicitly imposing or recognizing a fiduciary duty owed by a corporate director directly to the shareholders must fail. Rather, both the language and structure of § 8.30 (a) persuade us that if the Legislature had wished to impose or recognize such a duty owed

---

director performs his duties, not the correctness of his decisions, and by emphasizing the decision-making process, not the decision itself. Section 8.30 (a) thus requires a director to perform his duties in good faith, with the care that a person in a like position would reasonably believe appropriate under similar circumstances and in a manner he believes to be in the best interests of the corporation." "The comments to [c. 156D] were prepared by the attorneys who drafted the [a]ct and were intended to be a valuable tool in interpreting the [a]ct." Halebian v. Berv, 457 Mass. 620, 625 (2010).

to shareholders, it would have inserted into the statute an explicit provision to that effect.[9]

The plaintiffs argue that our interpretation of the statute is flawed, or in any event not dispositive of their claim, because in Chokel v. Genzyme Corp., 449 Mass. 272, 278 (2007), we stated that "[d]irectors owe a fiduciary duty to their shareholders." Chokel, however, was a very different case -- even though it involved a corporation that, like EMC, was publicly traded. The plaintiff in Chokel owned shares of the company's biosurgery division tracking stock (biosurgery stock) and challenged a decision of the board of directors to exchange the biosurgery stock for the company's general division stock as provided for in the company's articles of organization. See id. at 273. The plaintiff claimed that the directors' decision constituted a breach of the covenant of good faith and fair dealing implied in those articles, and also of the fiduciary duty owed by the directors to the shareholders. Id. In affirming a Superior Court judge's decision allowing the defendant directors' motion to dismiss, we concluded that, accepting as true the allegations in the plaintiff's complaint,

---

[9] It goes without saying that our interpretation of G. L. c. 156D, § 8.30 (a) (1)-(3), as not imposing or reflecting a duty owed by a corporate director to the company's shareholders does not mean that the section authorizes a corporate director to act in bad faith or with a lack of care that a person in a like position would reasonably believe appropriate with respect to the corporation's shareholders.

no provable set of facts presented a viable claim of breach of the contractual implied covenant. Id. at 278. And although, as the plaintiffs here point out, we stated that directors owe their shareholders a fiduciary duty, we concluded that "[w]hen a director's contested action falls entirely within the scope of a contract between the director and the shareholders, it is not subject to question under fiduciary duty principles." Id. But more to the point is that, in Chokel itself, the only cases we cited in support of the statement that corporate directors owe their stockholders a fiduciary duty were cases that involved close corporations. See id., citing Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 528-529 (1997), and Blank, 420 Mass. at 408. As next discussed, although directors of close corporations owe a fiduciary duty to the shareholders of such corporations, that is not the rule in Massachusetts for corporations generally. The statement in Chokel, 449 Mass. at 278, that "[d]irectors owe a fiduciary duty to their shareholders" was not necessary to the resolution of that case, and we think it was too broad. The statement does not apply here.

4. Massachusetts corporate law principles. As reflected in § 8.30 (a), its antecedent statute, G. L. c. 156B, § 65,[10] and

---

[10] General Laws c. 156B, § 65, provides in pertinent part:

decisions reflecting our common-law principles,[11] the general rule of Massachusetts corporate law is that a director of a Massachusetts corporation owes a fiduciary duty to the corporation itself, and not its shareholders -- although, as indicated in the previous paragraph and as the motion judge recognized, there are at least two exceptions.  First, there is a special rule for close corporations:  "[i]n the case of a close corporation, which resembles a partnership, duties of loyalty extend to shareholders, who owe one another substantially the same duty of utmost good faith and loyalty in

---

"A director, officer or incorporator of a corporation shall perform his duties as such, including, in the case of a director, his duties as a member of a committee of the board upon which he may serve, in good faith and in a manner he reasonably believes to be in the best interests of the corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. . . .  The fact that a director, officer or incorporator so performed his duties shall be a complete defense to any claim asserted against him . . . ." (Emphasis added.)

[11] See, e.g., Leventhal v. Atlantic Fin. Corp., 316 Mass. 194, 199 (1944) ("a stockholder does not stand in any fiduciary relation with the other stockholders or with the directors of the company"); Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 410 (1937) ("The directors of an ordinary business corporation often have been called trustees and their relation to the corporation is at least fiduciary.  They are bound to act with absolute fidelity and must place their duties to the corporation above every other financial or business obligation"); Jernberg v. Mann, 358 F.3d 131, 137 (1st Cir. 2004) ("the same duty of trust and strict good faith owed by directors and officers to the corporation itself did not extend from them to the individual stockholders," discussing Goodwin v. Agassiz, 283 Mass. 358, 360-361 [1933]).

the operation of the enterprise that partners owe to one another, a duty that is even stricter than that required of directors and shareholders in corporations generally" (footnote omitted). Demoulas, 424 Mass. at 528-529. See Donahue v. Rodd Electrotype Co. of New England, 367 Mass. 578, 593-594 (1975) ("stockholders in the close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another" and direct cause of action against directors could be maintained in this context). Second, where a controlling shareholder who also is a director proposes and implements a self-interested transaction that is to the detriment of minority shareholders, a direct action by the adversely affected shareholders may proceed. Coggins v. New England Patriots Football Club, Inc., 397 Mass. 525, 532-533 (1986), S.C., 406 Mass. 666 (1990). Neither of these exceptions, however, applies in this case.[12] EMC is a very

_____

[12] We also consider and reject the plaintiffs' claim that G. L. c. 156D, § 2.02 (b) (4), assumes a fiduciary duty between directors and shareholders always exists. Section 2.02 (b) (4) provides that a corporation may include a provision in its bylaws limiting the liability of a director, but if it chooses to include such a provision, it may not limit the liability of a director for a breach of fiduciary duties owed to the corporation or its shareholders. Id. Although this section recognizes that a fiduciary duty may be owed by corporate directors to the corporation's shareholders and, if so, it may not be eliminated or limited through adoption of an exculpatory bylaw, we interpret the section to mean that if a director owes a fiduciary duty to the corporation's shareholders -- which we recognize to be the case in at least the two circumstances

large, publicly traded corporation with over 1.9 billion shares of stock outstanding, and there is no differential between any class of stock or group of shareholders. This is also not a transaction proposed by a director-majority shareholder that affects minority shareholders adversely as compared to the majority shareholders. As the motion judge noted, the wrong alleged by the plaintiffs, undervaluing EMC to secure the merger and sale of the federation of companies, qualifies as a direct injury to the corporation, the entity to which the directors clearly owed a fiduciary duty of good faith and loyalty. Flowing from that alleged injury is a claimed derivative injury to each shareholder, whose individual shares, as a consequence of the asserted undervaluing of EMC itself, are consequently undervalued as well. We agree with the motion judge that the injury posited by the plaintiffs, and the alleged wrong causing it, fit squarely within the framework of a derivative action. Because the plaintiffs did not bring their claim as a derivative action, their complaint was properly dismissed.[13]

---

described here in the text -- liability for a breach of that duty may not be eliminated through the vehicle of a bylaw.

[13] Derivative proceedings brought on behalf of a Massachusetts corporation are governed by the act. Halebian, 457 Mass. at 623. See G. L. c. 156D, §§ 7.40-7.47. There is no dispute that the plaintiffs did not follow the pertinent requirements of the act, including the requirement of making "a written demand . . . upon [EMC] to take suitable action." G. L. c. 156D, § 7.42 (1).

5. Delaware law. In reaching this result, we necessarily have rejected the plaintiffs' argument that shareholders claiming the loss of their stock at an unfair price on account of allegedly improper actions by the board of directors is a direct rather than a derivative claim. The plaintiffs have a response, however, which is that we should change our approach and follow those corporate law jurisdictions, including in particular Delaware, that treat the plaintiffs' type of claim -- a challenge to the fairness of a merger transaction on the ground that the consideration is inadequate -- as a direct rather than a derivative claim. See Parnes v. Bally Entertainment Corp., 722 A.2d 1243, 1245 (Del. 1999) ("A stockholder who directly attacks the fairness or validity of a merger alleges an injury to the stockholders, not the corporation . . ."). See also Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1033, 1037-1039 (Del. 2004).[14] We

---

[14] As a general matter, the plaintiffs urge us to adopt the approach of the Delaware Supreme Court to the determination whether a particular shareholder claim is direct or derivative. The Delaware court has concluded that the determination in each case must "turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1033 (Del. 2004). The court in Tooley rejected the concept that a suit must be maintained derivatively if, as here, the claimed injury is one suffered equally by all shareholders, concluding that the concept was confusing and inaccurate. Id. at 1037. As we indicate in the

decline to do so. Delaware's General Corporation Law, Del. Code. Ann. tit. 8, c. 1, differs from the act, and has no equivalent of § 8.30. Delaware also has a history of asserting that directors stand in a fiduciary relation to stockholders of the company, in contrast to our own precedent. See In re MONY Group, Inc. Shareholder Litig., 853 A.2d 661, 676 (Del. Ch. 2004) (board of directors "owes its fiduciary duties to corporation and its stockholders"); Crescent/Mach I Partners, L.P. v. Turner, 846 A.2d 963, 979 (Del. Ch. 2000) ("Directors have an unyielding fiduciary duty to protect the interests of the corporation and the stockholders alike").

6. Equitable relief. The plaintiffs claim that the result we reach is unjust because even if they had sought to follow the statutory procedures governing derivative claims, see G. L. c. 156D, §§ 7.40-7.47, it was likely that the defendants would have taken steps to assure that the merger occurred before any derivative suit could be concluded, and, under our law, once the plaintiffs were no longer shareholders, they could not have continued to seek derivative relief because their ownership rights in EMC would have been extinguished. We agree that if a

---

text, Delaware corporate law principles and those of Massachusetts are not always congruent. We continue to adhere to the view that whether a claim is direct or derivative is governed by whether the harm alleged derives from the breach of a duty owed by the alleged wrongdoer -- here the directors -- to the shareholders or the corporation. See Bessette v. Bessette, 385 Mass. 806, 809 (1982).

shareholder no longer owns shares in a corporation, as a general rule, the shareholder would no longer have standing to pursue a derivative claim on behalf of the corporation.  See Billings v. GTFM, LLC, 449 Mass. 281, 296 (2007).  But we disagree that this means it is unfair or inequitable to require the plaintiffs and similarly situated shareholders to pursue derivative relief in a case such as this one.

The act clearly illustrates the procedures to follow to bring a derivative claim.  A shareholder must make a demand pursuant to G. L. c. 156D, § 7.42.  The corporation then must determine whether it would be in the best interests of the corporation to take over the shareholder's claim, and the statute specifies alternative ways that the corporation may undertake to make this determination.  G. L. c. 156D, § 7.44 (b).  If the demand is rejected, the shareholder may commence suit, in accordance with the time requirements in § 7.42 (2).  In this case, at any time between the time the proposed merger transaction was announced on October 12, 2015, and the date the merger transaction was completed, September 7, 2016, the plaintiffs could have made a derivative demand on EMC. They did not do so.[15]  We find nothing in the statutory

_____

[15] Moreover, if the plaintiffs had filed suit after having made such a demand that was rejected, and it appeared that the proposed merger might likely be completed while the suit was

provisions governing derivative proceedings to indicate or suggest that it offered the plaintiffs here, and other shareholders in the plaintiffs' position, a hollow or inadequate form of relief.[16]

    <u>Conclusion</u>.  For the foregoing reasons, the Superior Court's order dismissing the plaintiffs' complaint is affirmed.

<u>So ordered</u>.

---

pending, the plaintiffs could have sought preliminary injunctive relief.

[16] In that regard, it is important to keep in mind that a stockholder's derivative action is equitable in nature, and "[e]quitable considerations are relevant." <u>Martin</u> v. <u>F.S. Payne Co</u>., 409 Mass. 753, 760 (1991).  See <u>Samia</u> v. <u>Central Oil Co. of Worcester</u>, 339 Mass. 101, 123-124 (1959).  See also <u>Marquis Theatre Corp</u>. v. <u>Condado Mini Cinema</u>, 846 F.2d 86, 92 n.5 (1st Cir. 1988) ("Generally speaking, any recovery in a stockholder's derivative action suit belongs to the corporation. . . .  Under some circumstances, however, the courts have allowed the direct compensation of minority shareholders on a <u>pro rata</u> basis . . ." [emphasis in original; citation omitted]).