NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-491

DEBORAH MUCHER BARR

vs.

PETER SWENSON & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal concerns a closely held and family-owned corporation, John E. Swenson Co., Inc. (company), which operates the Hawthorne Motel in Chatham.  One of the company's shareholders, plaintiff Deborah Mucher Barr, brought the underlying complaint alleging that her uncles, defendants Peter Swenson and David Swenson,[2] committed breaches of their fiduciary

---

[1] David Swenson.  John E. Swenson Co., Inc., is a nominal defendant on whose behalf the plaintiff, a minority shareholder, also proceeds derivatively.

[2] Where Peter and David have the same last name, we refer to them and other members of their families by their first names to avoid confusion.

duties while serving on the board of directors.[3]  Barr's claims
against her uncles were dismissed on cross motions for summary
judgment.  Barr appeals, and we affirm.

Background.  We take the facts from the summary judgment
record, construing the evidence in the light most favorable to
Barr as the party against whom summary judgment was entered.
See ProQuip Ltd. v. Northmark Bank, 103 Mass App. Ct. 133, 135
(2023).

The Swenson family formed the company in 1948, and it
currently has 120 outstanding shares.  The company's bylaws
provide that a shareholder "desiring to sell or transfer . . .
stock . . . shall first offer it to the [company]."  However,
the company's bylaws also provide that the board of directors
may waive the requirement that a shareholder must first offer
stock to the company before proceeding with a stock sale, and
there has been a long history of the board doing so.

From 2002 to 2019, the board of directors comprised three
Swenson siblings:  Peter, David, and Barr's mother, Eleanor.  In
October 2018, Barr had a conversation with Peter during which
Barr expressed an interest in purchasing more of the company's

---

[3] Barr asserted direct and derivative claims for breach of
fiduciary duty.  She also asserted a claim for access to
corporate records, but this appeal does not present any issues
regarding Barr's claim for access to corporate records.

2

stock and asked Peter for an estimate of what the stock was worth. Peter provided an estimated value of $100,000 per share. Barr told Peter that, if stock became available, she was "interested in buying." Peter responded that he would "let [Barr] know." In February 2019, Eleanor died. Her seat on the board was not filled immediately, leaving Peter and David as the only members of the board.

Around the time that Eleanor's seat on the board became vacant, David's children -- John, Kari, and Scott -- decided to sell shares of company stock that they owned. David discussed the idea with Peter, and the two agreed that David's children would sell their shares to members of Peter's family at a price of $85,000 per share.[4] In April 2019, John sold two shares, one each to Peter's daughter and son-in-law. Also in April 2019, Kari and Scott each sold one share to Peter's wife. In May 2019, Peter and David, as the only members of the board, voted to waive the requirement that David's children had to offer the stock to the company. Thereafter, in August 2019, the board unanimously elected Barr to fill Eleanor's seat.

---

[4] During his deposition, David testified that he appreciated how much Peter was involved in running the Hawthorne Motel, which is why David reached out to Peter when David's children expressed an interest in selling their shares. It appears that Peter, in negotiating for members of his family to purchase at $85,000 per share, did not disclose that Barr may have been willing to make a better offer.

3

Discussion.  On summary judgment, a judge of the Superior Court concluded that Barr's claims for breach of fiduciary duty failed as a matter of law because the evidence of harm was too speculative.  We need not reach the question of harm, however, as we conclude that the evidence, even when viewed in the light most favorable to Barr, does not show that Peter or David violated their fiduciary duties.  See ProQuip Ltd., 103 Mass App. Ct. at 135.

"The directors of a corporation stand in a fiduciary relationship to the corporation" and "owe to the corporation both a duty of care and . . . a paramount duty of loyalty." Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 528 (1997).  As pertinent here, a fiduciary may not "tak[e], for personal benefit, an opportunity or advantage that belongs to the corporation," id. at 529, or transfer resources from the corporation to another corporation, see, e.g., Tocci v. Tocci, 490 Mass. 1, 16 (2022).

Barr argues that Peter and David violated fiduciary duties owed to the company when they arranged for David's children to sell their shares to members of Peter's family.  Barr argues that, where the company had a right to buy the shares and Barr would have paid $100,000 per share, Peter and David should have arranged for David's children to sell their shares to the company at $85,000 per share and for the company to resell those

4

shares to Barr at $100,000 per share, thereby netting the company $60,000 total for the four shares sold. The argument is rooted in the idea that Peter and David impermissibly "t[ook], for personal benefit, an opportunity . . . that belong[ed] to the [company]." Demoulas, 424 Mass. at 529. However, for the stock sales to present an opportunity for the company, Peter and David would have needed to orchestrate a scheme whereby the company purchased the shares for less than the company could resell them -- whether by purchasing the shares from David's children below value, reselling the shares to Barr above value, or some combination of the two. Either way, a shareholder would have been harmed, and Barr has not provided any support for the proposition that Peter and David had an obligation to exploit shareholders in this manner to make money for the company.[5] See International Bhd. of Elec. Workers Local No. 129 Benefit Fund v. Tucci, 476 Mass. 553, 561 (2017) (directors in close corporations owe fiduciary duties to shareholders).[6]

---

[5] As a factual matter, the evidence does not show that David's children would have sold at $85,000 per share had they known that Barr was willing to buy at $100,000 per share or that Barr would have been willing to buy at $100,000 per share had she known that David's children were willing to sell at $85,000 per share.

[6] A director's fiduciary duties to shareholders do not extend to personal transactions not involving matters of corporate governance. See Adelson v. Adelson, 60 Mass. App. Ct. 753, 767-768 (2004). Thus, as this court has held, in a private stock sale between a director and a shareholder, the director

5

Barr also argues that Peter violated his fiduciary duties by diverting assets away from the company to other competing motels that Peter and his family owned -- the Chatham Motel and Pilgrim Village. See, e.g., Tocci, 490 Mass. at 16. On appeal, Barr does not provide record support for the allegation that Peter diverted assets away from the company. Barr cites to evidence showing the various interests that Peter's family had in the competing motels. Of course Peter cannot divert assets from the company. However, the mere fact that Peter's family had interests in the Chatham Motel and Pilgrim Village does not mean that Peter diverted assets away to those motels.[7] Barr also cites to several pages of Peter's deposition testimony during which he was asked how supplies were acquired for the Hawthorne Motel. Peter explained that the Hawthorne Motel, the Chatham Motel, and Pilgrim Village all had separate credit cards and that, while supplies for the Hawthorne Motel were sometimes

---

does not owe fiduciary duties to the shareholder. See id. at 768. Here, however, Barr asserts that the company should have bought and resold stock to turn a profit, which would have been a transaction involving a matter of corporate governance.

[7] Barr also asserts that Peter's daughter, Jennifer, who was a general manager of all three motels, booked rooms from the Chatham Motel while working for the Hawthorne Motel. Assuming without deciding that the summary judgment record supports such an inference, Barr does not explain how Jennifer's booking of rooms for the Chatham Motel while working for the Hawthorne Motel shows a breach of Peter's fiduciary duties.

delivered to Pilgrim Village, those supplies were then taken over to the Hawthorne Motel.[8]  This evidence, even when construed in the light most favorable to Barr, does not show that Peter diverted assets away to competing motels.  See ProQuip Ltd., 103 Mass App. Ct. at 135.[9]

Judgment affirmed.

By the Court (Green, C.J., Henry & Ditkoff, JJ.[10]),

Clerk

Entered:  August 8, 2024.

---

[8] Peter explained that supplies were delivered to Pilgrim Village because they were less likely to be stolen there.

[9] As noted, Barr also claimed that Peter and David violated fiduciary duties owed to her, directly, as a shareholder.  See note 3, supra.  While directors in a close corporation owe fiduciary duties to shareholders, see International Bhd. of Elec. Workers Local No. 129 Benefit Fund, 476 Mass. at 561, Barr has not explained how Peter and David violated any fiduciary duties owed to her, individually.  For example, Barr does not contend that Peter and David had an obligation to tell her about the stock sales or that the shares had to be offered to all shareholders.

[10] The panelists are listed in order of seniority.

7