NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1093

JOSEPH DIGANGI, JR.

vs.

ROBERT QUINN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Robert Quinn, appeals from an order of the Superior Court denying his motions to vacate or reconsider a default judgment and damages assessment entered in favor of the plaintiff, Joseph DiGangi, Jr.  Quinn argues that the Superior Court lacked subject matter jurisdiction and the judge failed to properly apply certain factors under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974) ("Rule 60 (b)").  We affirm.

Background.  We recount the pertinent allegations of the complaint, which on the entry of default under Mass. R. Civ. P. 55 (b), as amended, 477 Mass. 1401 (2017), are treated as true for purposes of establishing liability.  See Danca Corp. v. Raytheon Co., 28 Mass. App. Ct. 942, 943 (1990).  In 2015,

DiGangi and Quinn formed a limited liability corporation, Urban Core, to develop real estate, with each holding a fifty percent interest in the company. Shortly after the company's formation, Quinn began behaving erratically and was routinely absent. In 2017, to make up for the fact that he had not been working, Quinn suggested that Urban Core undertake a development opportunity, for which he proposed to bear the full investment cost and split the profit with DiGangi. The project, referred to as 55 Hull Street, was to convert a multifamily building into two separate condominium units. As a result, Urban Core acquired 55 Hull Street, and obtained a loan to fund its redevelopment, which was personally guaranteed by both Quinn and DiGangi. Quinn initially managed the project, but he soon reverted to his prior behavior, became nonresponsive, and ignored the needs of the project. DiGangi took over the project but was unaware that Quinn had made certain promises to the project's abutters that were unfulfilled. For example, Quinn had promised the abutters that Urban Core would install a brick façade on the building so that the condominium units would blend into the neighborhood, but he never installed it. Because Quinn's promises went unfulfilled, the abutters filed three lawsuits against Urban Core. Also, because of Quinn's absenteeism, the project was delayed, resulting in an increase to the interest rate of the loan.

2

With his assets at risk due to his personal guarantee of the redevelopment loan, DiGangi spent his own money to complete the project. His expenses included paying employee salaries, litigation costs, including amounts paid to settle the lawsuits, increased interest payments, and additional miscellaneous expenses associated with delay caused by Quinn.

After both units of the 55 Hull Street project sold, DiGangi brought this action against Quinn alleging breach of fiduciary duty and tortious interference.[1] Quinn failed to defend the action, and a default judgment entered against him in August 2022. DiGangi filed an amended complaint in November 2022, adding reach-and-apply defendants from whom he sought to collect the damages owed by Quinn.[2] A damages assessment hearing was held in March 2023, and neither Quinn nor any of the reach-and-apply defendants appeared. DiGangi requested that the judge enter a default judgment and award damages in the amount of $1,296,934.98 with interest. In support of this request, DiGangi provided the court with an affidavit detailing the damages he suffered and numerous exhibits specifically

---

[1] The tortious interference claim arose out of Quinn's interference with DiGangi's ability to obtain a loan for business he was conducting in connection with a separate company with which Quinn was not affiliated.

[2] DiGangi also obtained an injunction preventing the reach-and-apply defendants from making disbursements to Quinn.

accounting for DiGangi's out of pocket expenses.  In June 2023, judgment entered for DiGangi with damages totaling roughly $1.3 million.

In April 2024, Quinn moved to vacate the judgment pursuant to Mass. R. Civ. P. 55 (b)-(c) and 60 (b).  That motion and a related motion to reconsider certain findings and to reduce the damages amounts were denied, and this appeal followed.

Discussion.  On appeal, Quinn argues first that the judgment should be vacated because the court lacked subject matter jurisdiction over the claims because DiGangi lacked standing to bring them.  He also argues that the judge erred in his analysis of Quinn's motion to vacate pursuant to Rule 60 (b).  We take each argument in turn.[3]

1.  Subject matter jurisdiction.  Quinn argues that DiGangi lacked standing to bring his claim of breach of fiduciary duty directly against him.  Instead, he asserts that the claim should

---

[3] Quinn also argues that DiGangi failed to properly serve process of his first amended complaint because he did not issue a new summons to Quinn.  Pursuant to Mass. R. Civ. P. 5 (a), as amended, 488 Mass. 1402 (2021), an additional summons for a defaulted party is required with "any pleading asserting new or additional claims for relief against [the party]."  DiGangi's amended complaint added reach-and-apply defendants in order to collect the judgment against Quinn, liability for which was resolved by his default.  Quinn's argument has no merit.  No new claims against Quinn were added, and no additional summons was required.

have been brought derivatively on behalf of Urban Core.[4][5]  We disagree.  "The question of legal standing is a jurisdictional matter."  Marchese v. Boston Redev. Auth., 483 Mass. 149, 156 (2019), citing Phone Recovery Servs., LLC v. Verizon of New England, Inc., 480 Mass. 224, 227 (2018).  "Where a plaintiff lacks standing to bring an action, the court lacks jurisdiction of the subject matter and must therefore dismiss the case."  Marchese, supra, citing Rental Prop. Mgt. Servs. v. Hatcher, 479 Mass. 542, 546-547 (2018).  When a party raises the issue of jurisdiction after the entry of judgment, it is properly treated as a claim for relief from judgment pursuant to Mass. R. Civ. P. 60 (b) (4), i.e., that the judgment is void.  See Sullivan v. Smith, 90 Mass. App. Ct. 743, 746 (2016).  "While most rule 60 (b) motions are addressed to the motion judge's discretion, a judge has no discretion to deny a request for relief from a void

---

[4] Quinn also argues that his mental illness rendered him incompetent such that a default judgment could not enter against him under Mass. R. Civ. P. 55 (b) (2) as a matter of subject matter jurisdiction.  Although Quinn has put forward evidence of a diagnosed mental illness, he has put forward no evidence that he was incompetent as defined by G. L. c. 190B.  His competency was therefore no impediment to an entry of default under Mass. R. Civ. P. 55 (b) (2).  "A person is presumed to be competent unless shown by the evidence not to be competent."  Guardianship of Roe, 383 Mass. 415, 442 (1981).

[5] Although Quinn also appears to challenge DiGangi's standing to bring his tortious interference claim, he offers no plausible reason why this claim should have been brought by Urban Core, nor has he provided us with any authority to support that argument.

5

judgment and must vacate it.  Consequently, we review de novo the denial of a rule 60 (b) (4) motion" (citations omitted).  Dumas v. Tenacity Constr. Inc., 95 Mass. App. Ct. 111, 114 (2019).

A plaintiff shareholder lacks standing to assert claims belonging to a corporation in a direct suit and, rather, "can only assert them in a shareholders' derivative suit."  Symmons v. O'Keeffe, 419 Mass. 288, 298-299 (1995).  Whether a claim may be pursued in a direct or derivative suit "depends on whether the harm [the plaintiff] claim[s] to have suffered resulted from a breach of duty owed directly to [him], or whether the harm claimed was derivative of a breach of duty owed to the corporation."  International Bhd. of Elec. Workers Local No. 129 Benefit Fund v. Tucci, 476 Mass. 553, 558 (2017) (Tucci).  Quinn argues that he harmed Urban Core only, and points to the fact that many of the damages DiGangi alleges flowed through the company.  For example, Quinn's actions and inactions resulted in lawsuits against Urban Core, rather than against DiGangi.  Although Quinn is likely correct that his actions harmed Urban Core, this fact is not dispositive because a breach can be against numerous parties at the same time.  See, e.g., Selmark Assocs. v. Ehrlich, 467 Mass. 525, 535 (2014) (terminating employment was breach of both fiduciary duty and conversion agreement).  The key question is whether DiGangi alleged a harm

6

that resulted from the breach of a duty Quinn owed to him, regardless of whether Quinn also committed a breach of a different duty to Urban Core. See Tucci, supra at 558.

Here, DiGangi alleged that Quinn committed a breach of the fiduciary duty he owed directly to DiGangi. The elements of a breach of fiduciary duty claim are (1) the existence of the duty; (2) a breach of that duty; (3) damages; and (4) a causal connection between the breach of duty and the damages suffered. See Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct. 153, 164 (1999). Quinn and DiGangi, as shareholders of a close corporation,[6] owed each other "substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another[, that is,] the 'utmost good faith and loyalty'" (citations omitted). Pointer v. Castellani, 455 Mass. 537, 549 (2009). In his complaint, DiGangi alleged that Quinn committed a breach of the fiduciary duty he owed to DiGangi by abandoning their business venture without warning. DiGangi further alleged that this breach caused him to incur considerable personal damages because it resulted in lawsuits against Urban Core,

_____

[6] Urban Core is a close corporation because it has a small number of shareholders, no ready market for its capital stock, and "substantial majority stockholder participation in the management, direction and operations of the corporation" (citation omitted). Brodie v. Jordan, 447 Mass. 866, 868-869 (2006).

7

additional financing costs, and delay costs, much of which he paid personally due to Urban Core's lack of funds.[7]  These allegations plausibly stated a claim for which DiGangi could seek relief directly from Quinn.  We are satisfied that each category of damages DiGangi alleged in his detailed affidavit were direct damages to DiGangi, rather than derivative.  Accordingly, Quinn's claim under 60 (b) (4) was properly denied because DiGangi did not lack standing.

2.  Quinn's Rule 60 (b) (1) claims.  Quinn challenges the judge's analysis of his claims under Rule 60 (b) (1), arguing that the judge disregarded factors he was required to consider as outlined in Berube v. McKesson Wine & Spirits Co., 7 Mass. App. Ct. 426, 430-431 (1979).  We discern no error.  "The resolution of motions for relief from judgment rests in the discretion of the trial judge.  Accordingly, the denial of a motion under Rule 60 (b) will be set aside only on a clear showing of an abuse of discretion" (quotations and citations omitted).  Atlanticare Med. Ctr. v. Division of Med. Assistance, 485 Mass. 233, 247 (2020).  "An abuse of discretion occurs where

_____

[7] The fact that Urban Core incurred debts ordinarily would not obligate DiGangi to spend his own money.  In a typical situation, any expense DiGangi incurred on Urban Core's behalf would have made him a creditor of Urban Core.  The fact that DiGangi personally guaranteed the redevelopment loan, however, meant that his own assets were directly linked to Urban Core's success.

8

'the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives.'"  Wilson v. Commerce Ins. Co., 496 Mass. 1002, 1002 (2025), quoting Commonwealth v. Jones, 478 Mass. 65, 69 (2017).

"Rule 60 (b) (1) authorizes relief from a final judgment for mistake, inadvertence, or excusable neglect. . . .  The burden to establish one of these conditions is on the defendant."  Hermanson v. Szafarowicz, 457 Mass. 39, 46 (2010).  The factors outlined in Berube, 7 Mass. App. Ct. at 430-431, "may inform the court's decision concerning whether the defendant has met his burden under this rule."  Hermanson, supra at 46-47.  The factors are:

> "(1) whether the offending party has acted promptly after entry of judgment to assert his claim for relief therefrom; (2) whether there is a showing either by way of affidavit, or otherwise apparent on the record, that the claim sought to be revived has merit; (3) whether the neglectful conduct occurs before trial, as opposed to during, or after the trial; (4) whether the neglect was the product of a consciously chosen course of conduct on the part of counsel; (5) whether prejudice has resulted to the other party; and (6) whether the error is chargeable to the party's legal representative, rather than to the party himself."

Berube, supra at 430-431.

Quinn argues that the judge committed an error of law in failing to apply factor two because Quinn raised defenses that DiGangi lacked standing and that the statute of limitations had

9

run.  The judge properly ignored Quinn's affirmative defenses, however, because "entry of a default precludes a defendant from raising affirmative defenses for the first time postdefault, because a defendant may not rely on an affirmative defense unless the defense was pleaded."  Jones v. Boykan, 464 Mass. 285, 295 (2013).  Furthermore, the judge separately evaluated those of Quinn's defenses that could have resulted in a voided judgment under Rule 60 (b) 4, i.e., lack of service, standing, and competency.  Accordingly, the judge did not err in disregarding these defenses in his excusable neglect analysis.

Quinn also argues that the judge erred in concluding that he failed to establish excusable neglect because the judge did not consider evidence that Quinn suffers from a mental illness. Again, that determination is within the sound discretion of the motion judge.  See Atlanticare Med. Ctr., 485 Mass. at 247.  The burden to establish that his mental illness was severe enough to constitute excusable neglect was Quinn's.  See Hermanson, 457 Mass. at 46.  Here, Quinn did not meet his burden, as the judge determined there was "ample evidence" that the default judgment "was entered against Defendant Quinn due to his own carelessness."  The judge discussed Quinn's mental health issues in assessing his competency and determined that he was capable

10

of understanding the legal proceedings brought against him.  We cannot say this constitutes an abuse of discretion.[8]

Order affirmed.

By the Court (Vuono, Grant & Walsh, JJ.[9]),

*Paul Little*

Clerk

Entered:  August 20, 2025.

---

[8] We note that the defendant filed a motion to vacate, set aside, and strike the default judgment and for reconsideration. Because we find no error in the denial of the 60(b) motion, we need not address Quinn's alternative claim that certain "historical facts" and the amount of damages awarded should be reconsidered, clarified, or modified.  To the extent that we do not address other arguments raised by Quinn, they "have not been overlooked.  We find nothing in them that requires discussion." Department of Rev. v. Ryan R., 62 Mass. App. Ct. 380, 389 (2004), quoting from Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[9] The panelists are listed in order of seniority.