WILLIAM J. MARTIN & others[1] vs. F.S. PAYNE CO.

Middlesex. January 9, 1991. - April 10, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Moot Question. Practice, Civil,* Moot case, Parties, Attorney's fees. *Corporation,* Stockholder derivative suit. *Sale,* Of stock.

In a stockholders' derivative action, the issue of an award of attorneys' fees to the plaintiffs was not rendered moot on appeal by the sale of all outstanding shares of stock in the corporation after final judgment was entered in the trial court. [756-758]

In a stockholders' derivative action brought to prevent unlawful expenditure of corporate funds, the judge correctly concluded that significant financial and nonfinancial benefits were made available to the corporation as a result of the litigation and that, even though the stockholders voted not to accept the benefits, the plaintiffs were entitled to an award of attorneys' fees. [758-761]

CIVIL ACTION commenced in the Superior Court Department on July 6, 1984.

Following review reported in 400 Mass. 230 (1987), further proceedings were had before *John Paul Sullivan,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Richard L. Neumeier* for the defendant.
*Kenneth H. Tatarian* for the plaintiffs.

WILKINS, J. Earlier aspects of this case were before us in *Dynan* v. *Fritz,* 400 Mass. 230 (1987). There we remanded the case for further action, including a determination of "the amount, if any, which, in the judge's discretion, the plaintiffs shall receive from the company [i.e., F.S. Payne Co.] in pay-

---

[1]Paul L. Bishop, William F. King, Anthony Accardi, John C. Sakakini, Roger L. Powers, and Albert Clark.

ment of their reasonable counsel fees and expenses." *Id.* at 249.

The company (Payne) has appealed from a judgment, entered in April, 1990, that awarded the plaintiffs approximately $392,000 for counsel fees and costs and also made certain other determinations. Payne makes no claim that the amount of the award should be reduced for any reason, but rather, arguing that it received no benefit in this stockholders' derivative action, Payne challenges the award of any fee at all.

We shall briefly describe certain events since our June, 1987, opinion. In that opinion, we did not decide whether the standard agreement to repurchase stockholders' shares on death or retirement called for the use of the number of Payne shares outstanding or the number of Payne shares issued on any valuation date. We noted that language in the buy-back agreements presented problems.[2] We suggested that the company might wish to revise the agreements. *Id.* at 245 n.20. In October, 1987, the Payne stockholders voted to use the number of shares outstanding in valuing repurchased stock and not the number of shares issued. Because the number of Payne shares outstanding was substantially less than the number of shares issued, the shareholders' decision increased the cost to Payne of repurchasing shares and rejected the opportunity that this case had given Payne to reduce the cost of buying back its shares.

Judgment after rescript, not intended to be a final judgment, was entered in April, 1988. That judgment determined

---

[2] We said: "The buy-back agreements by which the company may repurchase its stock at a price which may not be closely related to its market value at the time of repurchase is a potential source of continuing trouble, particularly in times when the stock is worth significantly more than its repurchase price. In such circumstances, the incentives to obtain majority control and not to sell treasury stock at cost are strong. Assuming the company's financial capacity to repurchase shares as they become available on the death or retirement of stockholders, the pressure on continuing stockholders is strong to keep the class of stockholders closed and to seek to be a survivor, as in a joint tenancy or in a tontine." 400 Mass. at 244-245 n.20.

which stockholders were disinterested on the question of the
ratification of the 1982 agreement to repurchase the stock of
Edward A. Fritz, Jr., a former president of Payne, and thus
were entitled to vote, as our opinion indicated, on whether to
accept the terms of Payne's agreement with Fritz concerning
the repurchase of his shares. See 400 Mass. at 244. The
judgment further provided that, if the stockholders were to
elect to repurchase the Fritz shares, they would be deemed to
have been repurchased in 1984 and 1985 "for the purpose of
calculating the per share price for stock repurchased under
the Buy-Back Agreement at any time after January 1,
1987." This provision was detrimental to Payne because it
increased the per share cost of stock repurchased after January 1, 1987. It apparently directly benefited individual plaintiffs who after January 1, 1987, had resold or would resell
their stock to Payne.

The April, 1988, judgment also stated that "the Buy-Back
Agreement provides for the use of the number of shares issued in calculating repurchase prices, subject to any modification by the parties to the Agreement which may occur or
may have occurred subsequent to the issuance of the Supreme Judicial Court's decision." Because the stockholders
had already voted to use the number of shares outstanding, it
is not immediately apparent why this provision was included
in the judgment. The issue decided does, however, have a
bearing, as we shall see, on the judge's award of counsel fees
to the plaintiffs. The judgment additionally stated that the
court would retain jurisdiction to decide the question of
counsel fees for the plaintiffs after the stockholders' vote on
the purchase of the Fritz stock.

In July, 1988, the stockholders voted unanimously to ratify
the agreement to repurchase the Fritz stock, using the number of shares outstanding in determining the value of Fritz's
stock. The stockholders' decision resulted in Payne paying
substantial amounts to Fritz that would not have been payable if they had not ratified the agreement.

In April, 1990, the judge entered a final judgment that
awarded approximately $392,000 in counsel fees and costs to

the plaintiffs. He stated that the defendants had not acted in good faith in certain respects and concluded that the plaintiffs had brought the action in good faith. On the critical question whether this derivative action had benefited the corporation, he ruled that the facts that the stockholders had ratified the Fritz agreement and had selected the shares outstanding method for repurchasing stock were not dispositive on the question of benefit. He ruled that "significant financial benefits were made available to the company as a result of the lawsuit in that the company could have used the shares issued valuation formula in redeeming stock and thereby saved itself thousands of dollars per share." He found that the potential, but rejected, saving under the Fritz agreement was almost $700,000. He seems to have accepted the plaintiffs' calculation of a potential saving of almost $1,500,000 in the repurchase cost of 670 shares that Payne bought back between June, 1987, and July, 1988. He also concluded that Payne obtained nonfinancial benefits from the litigation because it raised the company's standards of fiduciary performance and that counsel fees could be based on such intangibles. He impliedly rejected Payne's argument that, because there was no fund produced by the litigation from which counsel fees could be paid, any award of counsel fees in this stockholders' derivative action was improper. We allowed Payne's application for direct appellate review.

We are advised that, since final judgment was entered, a corporation has purchased all Payne's stock. The plaintiffs argue that, because of the sale and the terms of the agreement to sell, all issues in this case, including the issue of counsel fees, are moot. We shall discuss the mootness issue first and, after concluding that the counsel fees issue is not moot, we shall then turn to that issue. Finally, we shall discuss the question whether the judge was correct in concluding that the Fritz shares should be treated as already redeemed for the purpose of valuing the repurchase price of certain shares.

1. The plaintiffs argue that the issues that Payne raises on appeal are moot because, due to changes in circumstances,

the parties "no longer have a stake in the determination of [those issues]." *First Nat'l Bank* v. *Haufler*, 377 Mass. 209, 211 (1979). The plaintiffs rely on (1) the sale of all Payne's stock by its remaining stockholders to a single corporate purchaser and (2) an escrow agreement between those stockholders and the purchaser under which, apparently, the selling stockholders, through funds held in escrow, will pay any liabilities of Payne that result from the judgment in this case.

The sale of all outstanding shares of Payne stock to an outside purchaser obviously makes unimportant to the parties the proper future application of the stock buy-back agreements. The question whether shares outstanding or shares issued should be used in valuing the stock of a deceased or retired employee, in repurchasing stock under the buy-back agreements, will not arise again among the parties. To the extent, however, that the judge's ruling in the plaintiffs' favor on this issue provides a basis for the plaintiffs' claim for counsel fees, the issue is not moot, unless the counsel fees issue itself is moot. A second question, whether certain shares of the defendant Fritz should have been treated as outstanding on particular dates when Payne stock was repurchased under buy-back agreements, also can have no effect on future events. That issue does have a bearing, however, on the per share prices that Payne must pay to certain stockholders who have sold their shares back to Payne. That issue is, therefore, not moot, unless it is rendered so by the terms of the escrow agreement between the new stockholder and the selling stockholders.

The plaintiffs argue that any obligations to be satisfied pursuant to the judgment in this case are not the responsibility of Payne, against which the judgment has been entered, but rather are the responsibility of the selling shareholders who, it is said, have put aside sufficient funds in an escrow account to satisfy Payne's contingent obligations, including any amounts to be paid pursuant to the judgment.

The issues in this appeal are not ones in which both parties no longer have a stake. Certainly, the plaintiffs care about an award for attorneys' fees and about proper payment for stock

sold back to Payne. They would be most disappointed if we were to declare the issues moot and then follow our usual practice of vacating the judgment on the ground of mootness and not on the merits. See *First Nat'l Bank* v. *Haufler*, *supra* at 212; *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 708 (1976), and cases cited. On the Payne side, the selling stockholders, whom Payne is indirectly representing, have a major financial interest in the appeal. The escrow agreement, which is not in the record, is apparently based on the assumption that the appeal will go forward, and, therefore, obligations under the escrow agreement will be influenced by the judgment. Certainly, the selling stockholders do not all agree that Payne's obligations expressed in the judgment are no longer important to them.

In any event, it is difficult to conclude that Payne has no continuing interest in a judgment being entered against it that imposes on it an obligation to pay substantial sums to the plaintiffs, even if, assuming the solvency of the escrow fund, Payne hopes and expects that it will not ultimately be responsible for those amounts. All issues are not moot as the result of the escrow agreement.[3]

2. The plaintiffs were entitled to an award of attorneys' fees. Our cases have acknowledged that a plaintiff in a stockholders' derivative action is entitled to an award of counsel fees out of whatever proceeds of the action the corporation receives. See *Coggins* v. *New England Patriots Football Club, Inc.*, 406 Mass. 666, 669 (1990); *Shaw* v. *Harding*, 306 Mass. 441, 450-451 (1940); *Cain* v. *Cain*, 3 Mass. App. Ct. 467, 479 (1975). In the case before us, Payne recovered no funds. Payne did, however, have the opportunity as a re-

---

[3]By agreement, the parties obtained from the Bank of Boston a letter of credit, the terms of which are not in the record, to secure payment of the order for counsel fees if the Superior Court order is affirmed or fees are otherwise ordered on appeal. Presumably, the bank's obligations under the letter of credit are based on the terms of whatever judgment is entered as a result of the appeal. It is unclear whether the plaintiffs would have any rights under the letter of credit if we were to declare the issue of counsel fees to be moot.

sult of this action to avoid paying Fritz for his stock on a shares outstanding basis. This action, moreover, identified the Fritz agreement as not made in good faith and void at the election of Payne's stockholders. See *Dynan* v. *Fritz*, *supra* at 242-244. This action also led to a judgment that Payne could have used the shares issued formula (rather than the shares outstanding formula) in valuing stock for repurchase and thereby could have saved substantial sums. We shall return to the question whether the judge's determination was correct that the buy-back agreement called for the use of shares issued but, for the moment, we shall assume his ruling to be correct. If so, Payne had the option, from the opportunity to void the Fritz agreement and in the repurchase of stock from mid-1987 to mid-1988, to save over $2,000,000 in the cost of repurchasing shares. The fact that this action is not one to recover improperly distributed funds but rather is one to prevent funds from being expended unlawfully does not bar an award of attorneys' fees. Nor does the fact that the stockholders voted not to accept the benefits of the litigation require that an award of attorneys' fees be denied. The plaintiffs created for Payne the opportunity to save corporate funds by identifying corporate misconduct. Substantial financial benefits were there for the taking. That circumstance is sufficient to warrant a discretionary award of attorneys' fees.[4] Cf. *Koppel* v. *Wien*, 743 F.2d 129, 134 (2d Cir. 1984) (action to protect interests of participants in real estate venture; "It is immaterial to an award of attorney's

---

[4] In concluding as we do, we need not decide whether intangible corporate benefits, such as raising the standards of fiduciary relationships (corporate therapeutics), could ever justify an award of attorneys' fees in a stockholders' derivative action. Compare *Lewis* v. *Anderson*, 509 F. Supp. 232, 238 (C.D. Cal. 1981), aff'd, 692 F.2d 1267, 1270-1271 (9th Cir. 1982) (substantial, but nonmonetary benefit conferred on corporation when stockholder action led to stockholder ratification of challenged action) with *Mokhiber on Behalf of Ford Motor Co.* v. *Cohn*, 608 F. Supp. 616, 620, 628 (S.D.N.Y. 1985), aff'd, 783 F.2d 26 (2d Cir. 1986) (no tangible nonmonetary benefit as in certain other cases; benefit purely cosmetic and ephemeral). Cf. *Mills* v. *Electric Auto-Lite Co.*, 396 U.S. 375, 394-395 (1970). See Principles of Corporate Governance: Analysis and Recommendations § 7.18 comment d (Tent. Draft No. 10 1990).

fees whether beneficiaries claim or accept the benefits obtained on their behalf").

We return to the shares issued-shares outstanding question. The 1987 rescript from this court did not identify this issue as one for further attention. The trial judge answered it without any explanation for his conclusion and in the face of this court's conclusion that the agreement was ambiguous. See *Dynan* v. *Fritz*, *supra* at 240. The issue is important in assessing what potential corporate benefit this stockholders' action created. Certainly, this action resulted in this court's rejection of an interpretation that the buy-back agreements provided that the number of outstanding shares must be used in valuing shares on repurchase. *Id.* at 240-241. The plaintiffs' action, therefore, presented Payne with the opportunity at least to contend at the time of each repurchase that the shares issued approach was the proper one. As our earlier opinion indicates, Payne had been successful for the most part over the years in maintaining this position. *Id.* at 234-235. The opportunity to maintain this position in the repurchase of shares was a financial benefit to the corporation that justified the award of counsel fees, even though it is not quantifiable in dollars and Payne decided not to take advantage of it.

There is another reason to conclude that an award of counsel fees in this case was appropriate. Equitable considerations are relevant in derivative stockholder actions. Such considerations are most appropriate in dealing with relationships among stockholders in close corporations. See *Donahue* v. *Rodd Electrotype Co.*, 367 Mass. 578, 592-593 (1975). Payne was a close corporation. See *Dynan* v. *Fritz*, *supra* at 242 n.17. As the number of stockholders decreased by death or retirement, the market value of the remaining outstanding shares increased. That result was not inevitable. Corporate funds necessary to buy back the shares of departed stockholders might not have been there. *Id.* at 244-245 n.20. Funds were there, however, and the stockholders who survived as Payne employees to the time of the buy-out by another corporation obtained substantially more, according to

assertions Payne does not deny, for each share than the formula in the buy-out agreements called for, however construed. The selling stockholders stopped the game of corporate musical chairs before there was a single, final winner and collectively obtained a substantial financial benefit, a result not of their skill but of fortuitous timing. The defendants have had the benefit of their counsel fees being paid by the corporation. *Id.* at 245-246. In fairness, the plaintiffs, who identified corporate misconduct and potential, but unrealized, financial savings to Payne and who, the judge found, undertook this action in good faith, should be entitled to the payment of their counsel fees related to those aspects of this case that we have identified as potentially beneficial to Payne.

3. The judge's ruling was correct that the Fritz shares should have been treated as no longer outstanding in valuing Payne stock repurchased after January 1, 1987. The stockholders' vote accepted the terms of the Fritz agreement, and a determination that those shares should be treated as repurchased at the times indicated in the Fritz agreement is logical.

The portion of the judgment concerning the treatment of the Fritz shares in deciding repurchase prices provided no benefit to the corporation. Indeed, it was detrimental to Payne because it has caused Payne to be obliged to pay more for the repurchase of shares than would be the case if the Fritz stock had been treated as outstanding until actually repurchased. The claim that Payne should pay the plaintiffs more for their stock is not a derivative stockholders' claim. Attorneys' fees for this portion of the plaintiffs' case are not appropriately recoverable as fees in a stockholders' derivative action. However, Payne attacks the award of attorneys' fees only in its entirety and never makes a claim that the award should be reduced because it was at least partially wrong. We, therefore, decline to direct a sorting out of the fee award.

We do conclude in our discretion, however, that the plaintiffs are not entitled to an award of counsel fees on appeal. The majority of their brief is devoted to the rejected claim of

mootness and to their direct claim for payment of higher amounts for their repurchased stock. Indeed, the plaintiffs' brief does not ask for an award of attorneys' fees in this appeal.

*Judgment affirmed.*