NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13510

FANNIE MAE[1] & another[2]  vs.  ANTHONY MICHAEL BRANCH.


Plymouth.     March 6, 2024. - July 12, 2024.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, & Dewar, JJ.


Summary Process, Appeal.  Practice, Civil, Summary process, Moot
    case, Intervention, Substitution, Counterclaim and cross-
    claim, Summary judgment.  Mortgage, Real estate,
    Foreclosure, Validity.  Notice, Foreclosure of mortgage.


     Summary process.  Complaint filed in the Southeast Division
of the Housing Court Department on June 12, 2017.

     The case was heard by Wilbur P. Edwards, Jr., J., on a
motion for summary judgment; and after transfer to the Metro
South Division of the Housing Court Department, a motion to
intervene, substitute a party, and amend the judgment was heard
by Neil K. Sherring, J.

     After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


     Anthony Michael Branch, pro se.
     Karl F. Stammen, Jr., for the intervener.
     Thomas J. Santolucito for the plaintiff.
     Grace C. Ross, pro se, amicus curiae, submitted a brief.

---

     [1] Also known as Federal National Mortgage Association.

     [2] Roberto Pina Cardoso, intervener.

KAFKER, J.   After being assigned the high bid at the 2016 foreclosure sale of Anthony Michael Branch's property in Brockton, the Federal National Mortgage Association, better known as Fannie Mae, commenced a summary process action against Branch in the Housing Court.   Judgment for possession entered in Fannie Mae's favor, and Branch appealed.   In December of 2018, during the pendency of the appeal, Fannie Mae sold the property to a third party, Roberto Pina Cardoso.   Over the next four years, while Branch remained in possession of the property, Cardoso would successfully intervene and be joined as a party as of right with Fannie Mae and be awarded use and occupancy payments.   In an unpublished May 2023 decision, however, a panel of the Appeals Court vacated the Housing Court's judgment of possession as moot, reasoning that after the sale to Cardoso, Fannie Mae's possessory interest was no longer superior to Branch's.   The panel likewise declared moot Branch's appeal from the order allowing Cardoso to intervene but affirmed dismissal of Branch's counterclaims.   See Fannie Mae v. Branch, 102 Mass. App. Ct. 1121 (2023) (memorandum and order pursuant to rule 23.0).   The Appeals Court decision thereby required Cardoso to reestablish a right to possession and use and occupancy payments in a new and separate case in the Housing Court.   We granted further appellate review.

We disagree with the Appeals Court's determinations of mootness. Because it is undisputed that Fannie Mae transferred its entire interest in the property -- including any possessory interest -- to Cardoso after foreclosure, we conclude that he maintains a live stake in adjudication of the judgment for possession. We therefore affirm the order allowing Cardoso to intervene and, reaching the summary judgment issues that the Appeals Court did not, affirm entry of judgment for possession in favor of Fannie Mae. We likewise affirm the dismissal of Branch's counterclaims.[3]

Background. In 2009, Branch purchased the subject property using a loan from Pentagon Federal Credit Union (Pentagon), secured by a mortgage on the property. On February 28, 2013, Pentagon mailed Branch a notice informing him that his loan was in default.[4] Further notices followed on June 12, 2013, and June 30, 2014. Branch was unsuccessful in negotiating a loan modification, and when he did not cure the default, Pentagon elected to move forward with foreclosure. A foreclosure sale was scheduled but was subsequently canceled after Branch filed

---

[3] We acknowledge the amicus brief submitted by Grace C. Ross.

[4] The earliest missed payment in the record is June 1, 2012. Branch does not dispute that he was in default.

for bankruptcy in January 2016. Bankruptcy proceedings were terminated in June of 2016.

In August 2016, Pentagon gave notice of an impending foreclosure sale, both by mailed notice to Branch and publication in a local newspaper.[5] The sale was held on September 14, 2016. Pentagon was the high bidder and assigned its bid to Fannie Mae. On November 15, 2016, a foreclosure deed granting the property to Fannie Mae was recorded with the Plymouth County registry of deeds.[6]

On April 6, 2017, Fannie Mae served Branch with a fourteen-day notice to quit, followed on June 5, 2017, by a summary process summons and complaint, which sought both possession and use and occupancy payments. A trial date was set for June 28.

On June 19, 2017, Branch timely filed his answer and brought a number of counterclaims.[7] He also requested discovery, and the trial date was continued. In November 2017, Fannie Mae moved for partial summary judgment on its claim for possession

---

[5] Prior to the foreclosure sale, Branch attempted to work out a sale of the property on his own; he notified Pentagon of at least one offer, but it was rejected as too low.

[6] Various affidavits concerning the mortgage, foreclosure, and sale were also recorded.

[7] The counterclaims were based on promissory estoppel, negligent misrepresentation, violations of G. L. c. 93A, and violations of G. L. c. 244, § 35C.

and on Branch's counterclaims.[8]  On March 21, 2018, the motion judge ruled in Fannie Mae's favor on all issues, entering a judgment for possession and dismissing Branch's counterclaims. Branch appealed.  Shortly thereafter, Branch was also ordered to pay $1,800 per month to Fannie Mae for use and occupancy. Branch appealed from that order; that appeal took over four years to resolve.[9]  See generally Branch v. Federal Nat'l Mtge. Ass'n, 491 Mass. 1009, 1009-1011 (2022).

On December 10, 2018, during the pendency of Branch's appeals, Fannie Mae sold the subject property to Cardoso, transferring "all the estate, right, title interest, lien equity and claim whatsoever" to Cardoso via quitclaim deed.  See G. L. c. 183, § 17 (listing applicable quitclaim covenants).  Cardoso filed a summary process complaint against Branch and successfully moved to intervene in the existing Appeals Court case.

In September 2020, a panel of the Appeals Court held that the dispute over use and occupancy payments owed to Fannie Mae was moot, as Fannie Mae no longer sought those payments after selling the property to Cardoso.  The panel did, however, remand

---

[8] Fannie Mae did not move for summary judgment on its claim for use and occupancy payments.

[9] He initially saw some success:  a single justice of the Appeals Court reduced his payment to $500 per month.

the case to the Housing Court and "grant Cardoso leave to file, and the Housing Court leave to consider, a motion to intervene or to substitute Cardoso as the plaintiff in the summary process action."

Cardoso thereafter filed such a motion on November 3, 2020. Branch opposed. The motion judge concluded that Cardoso "should be allowed to intervene as a party as of right," and "be joined with [Fannie Mae]." The successful intervention and joinder prompted Cardoso to voluntarily dismiss his own, seemingly duplicative, summary process action.[10] He also obtained an order for use and occupancy payments from Branch, and successfully defended that order on appeal.[11]

On April 14, 2023, over five years after initial entry of the judgment for possession, oral argument on Branch's appeal from that judgment was held before a panel of the Appeals Court. At argument, the panel sua sponte raised the question of mootness, and indeed, in its unpublished decision of May 23, 2023, the panel would rely on mootness to dispose of most of the

_____

[10] When Cardoso first commenced his action he was apparently unaware of the existing summary process action. Branch's answer to Cardoso's complaint requested dismissal on the grounds that "the issues are the same" as in the other action.

[11] In 2022, we affirmed an order of the single justice denying Branch's petition for relief from his obligation to make use and occupancy payments to Cardoso. Branch, 491 Mass. at 1011.

issues before it.  The panel first vacated the judgment for possession, reasoning that it was moot "because [Fannie Mae] no longer has any possessory interest in the property."  This decision, in the panel's view, obviated the need to consider Branch's foreclosure-related defenses and rendered moot the appeal from Cardoso's motion to intervene.  The panel did, however, uphold dismissal of Branch's counterclaims.  Cardoso's motion for reconsideration of the determinations of mootness was summarily denied.  We subsequently granted Cardoso's application for further appellate review.

Discussion.  1.  Mootness.  We begin with the threshold question of mootness.  The principle that courts do not decide moot cases "lies at the foundation of the common law."  Sullivan v. Secretary of the Commonwealth, 233 Mass. 543, 546 (1919).  A case becomes moot when "no actual controversy remains, or the party claiming to be aggrieved 'ceases to have a personal stake in its outcome.'"  DiMasi v. Secretary of the Commonwealth, 491 Mass. 186, 190 (2023), quoting Seney v. Morhy, 467 Mass. 58, 61 (2014).  In such cases, "a ruling . . . would offer no additional relief and would not alter [any] party's legal position."  Lynn v. Murrell, 489 Mass. 579, 583 (2022).  We hew to this rule for several important reasons:  "because (a) only factually concrete disputes are capable of resolution through the adversary process, (b) it is feared that the parties will

not adequately represent positions in which they no longer have a personal stake, (c) the adjudication of hypothetical disputes would encroach on the legislative domain, and (d) judicial economy requires that insubstantial controversies not be litigated."[12]  Wolf v. Commissioner of Pub. Welfare, 367 Mass. 293, 298 (1975).

Scrutinizing the case before us, we conclude that the appeal is not moot.  There remains an actual controversy, and a party claiming to be aggrieved retains a personal stake in the outcome of this case.  In the Housing Court and on appeal, Branch's principal challenge to the claim for possession and to the use and occupancy payments has been attacking the validity of the foreclosure and, therefore, the validity of Fannie Mae's acquisition of a unified title to the property.  See Eaton v. Federal Nat'l Mtge. Ass'n, 462 Mass. 569, 575-576 (2012) (foreclosure extinguishes mortgagor's equitable right of redemption, reuniting equitable and legal titles in mortgagee). This necessarily implicates Cardoso's own right to possession. It is undisputed that Fannie Mae transferred its entire interest

---

[12] However, "mootness differs from other doctrines of justiciability in that it is a factor affecting [the court's] discretion, not its power, to decide a case" (quotations and citation omitted).  Murrell, 489 Mass at 583.  We may exercise that discretion to decide moot issues in certain circumstances. See id. at 583-584, citing Ott v. Boston Edison Co., 413 Mass. 680, 683 (1992).

in the property -- including any possessory interest -- to Cardoso after foreclosure, and Cardoso has been allowed to intervene as a party as a matter of right and joined as a party with Fannie Mae.  Cardoso's rights to possession and use and occupancy are thus derivative of Fannie Mae's, and although Fannie Mae's stake in the case has diminished, Cardoso's has not.  See Matter of a R.I. Select Comm'n Subpoena, 415 Mass. 890, 894 (1993) (question of defunct commission's right to certain documents was not moot where commission's successor was properly added as party and successor was "entitled to all the documents that the commission was entitled to receive").  Cf. Pelullo v. Croft, 86 Mass. App. Ct. 908, 910 (2014) (case not moot where, during pendency of appeal, subject property sold and merged with adjacent parcels but legal issue would still affect resulting parcel).

The case then is not moot simply due to the transfer of the property from Fannie Mae to Cardoso, and the Appeals Court's decision to vacate Fannie Mae's judgment for possession on that basis ignored Cardoso's claimed rights to possession and ongoing use and occupancy payments.[13]  It is plain that there is an active dispute over those rights, despite the transfer of the

---

[13] The Appeals Court decision recognized that, as a consequence of its ruling, Cardoso would be required to reestablish his rights via "a new summary process action initiated by [him]."

property from Fannie Mae to Cardoso, and Cardoso retains an ongoing personal stake in such litigation. See Martin v. F.S. Payne Co., 409 Mass. 753, 758 (1991) (case not moot where parties retain stake in fee dispute, notwithstanding sale of defendant company and plaintiffs' attempts to disclaim any interest in adjudication). See also Mullholland v. State Racing Comm'n, 295 Mass. 286, 289 (1936) (case moot where "a decision by the court will not be applicable to existing rights"); Sullivan, 233 Mass. at 546 (case moot where "[i]t can have no practical result"); Robinson v. Contributory Retirement Appeal Bd., 62 Mass. App. Ct. 935, 937 (2005) (case moot where plaintiff's supposed stake based on mere "supposition about . . . an unlikely event occur[ing] on some future date"). For these reasons, we conclude that this case is not moot.

We acknowledge that this case is different from the prototypical summary process proceeding, in which the same party obtains judgment and then seeks execution in short order. But we do not view this difference as meaningful to a mootness analysis, as Cardoso stands in Fannie Mae's shoes and has been properly joined as a party. See discussion infra.[14]

_____

[14] Our decision today is buttressed by the fact that this case implicates none of the identified hazards of deciding moot cases. See Wolf, 367 Mass. at 298. The material facts are concrete and undisputed. Cardoso is a party to the case, having successfully intervened in the appeal and in the Housing Court,

In sum, this case remains an "'actual controversy,' that is, 'a real dispute . . . where the circumstances . . . indicate that, unless a determination is had, subsequent litigation as to the identical subject matter will ensue.'" Boston Herald, Inc. v. Superior Court Dep't of the Trial Court, 421 Mass. 502, 504 (1995), quoting Boston v. Keene Corp., 406 Mass. 301, 304 (1989). It is therefore not moot, and accordingly, we turn to the remaining issues.

2. Motion to intervene and substitute. In the Housing Court, Cardoso filed a "Motion to Intervene, Substitute and Amend Judgment" in which he sought both to intervene and be substituted as a plaintiff "on the claim for possession, permitting him to proceed as [p]laintiff in all respects in this action." In ruling on the motion, the Housing Court judge concluded that, pursuant to Mass. R. Civ. P. 24 (a) and (b), 365 Mass. 769 (1974), Cardoso "should be allowed to intervene as a party as of right," and that, pursuant to Mass. R. Civ. P. 25 (c), 365 Mass. 771 (1974), "because [Fannie Mae's] interest

---

and was joined with Fannie Mae as a party. He and Branch maintain live interests in the outcome and have vigorously litigated those interests. A ruling in this specific case will not impinge on legislative power. And reaching this decision will not be a waste of judicial resources -- indeed, the opposite is likely true, as it obviates the need for Cardoso to pursue a new and identical summary process case.

in the premises has been transferred to him, [Cardoso] should be joined with [Fannie Mae]."[15]

As a consequence of its view that the judgment for possession was moot, the Appeals Court declared that the appeal from the allowance of Cardoso's motion to intervene was also moot. Because of our determination that the judgment is not moot, we now review that motion's merits.[16]

a. Intervention. Rule 24 of the Massachusetts Rules of Civil Procedure provides multiple avenues by a which a nonparty may move to intervene in an existing action. Rule 24 (a) mandates that such requests for intervention, if timely, "shall" be allowed as of right either when authorized by statute or

> "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

---

[15] The judge's memorandum and order did not address Cardoso's request to amend the judgment, referring to the motion only as a "motion to intervene and be joined as a Plaintiff."

[16] Appellate review of a rule 24 (a) decision is de novo, although the decision may depend on a motion judge's subsidiary findings of fact, which are entitled to deference. Rule 24 (b) and rule 25 decisions are reviewed for an abuse of discretion. See Reilly v. Hopedale, 102 Mass. App. Ct. 367, 384 (2023); Bay Colony Constr. Co. v. Norwell, 5 Mass. App. Ct. 801, 801 (1977). Here, the material facts regarding the transfer of the property are undisputed.

In contrast, rule 24 (b) permits, but does not require, intervention when a nonparty shows a conditional statutory right to do so or "when an applicant's claim or defense and the main action have a question of law or fact in common," subject to the court's consideration of "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Id.

The motion judge determined that Cardoso must be permitted to intervene as of right pursuant to rule 24 (a). We agree. As present owner of the property, Cardoso undeniably has "an interest relating to the property or transaction which is the subject of the action." The soundness of his title hinges on whether Branch's interest was properly extinguished by foreclosure, which is the issue at the heart of the case; a disposition in Branch's favor "may as a practical matter impair or impede [Cardoso's] ability to protect [his] interest." Id. And after selling the property to Cardoso, Fannie Mae has refused to take any position in defense of its judgment for possession -- it certainly cannot "adequately" represent Cardoso's interest.

Finally, we note that rule 24 (a) also requires that a motion to intervene be "timely." After judgment, this means that a party seeking to intervene "must establish a compelling interest in the litigation and must justify its failure to

intervene at an earlier stage of the action." Cruz Mgt. Co. v. Thomas, 417 Mass. 782, 785 (1994).  Cardoso meets both criteria, given that his compelling interest as owner of the property did not arise until Fannie Mae's postjudgment sale to him.  See McDonnell v. Quirk, 22 Mass. App. Ct. 126, 132-134 (1986) (in action challenging seller's title, buyer of land entitled to postjudgment intervention after seller abandoned defense).  As Cardoso met all of rule 24 (a)'s requirements, the motion judge properly granted his request to intervene.[17]

b.  Substitution.  The decision to allow Cardoso to intervene was paired with a decision ordering that he be joined as a plaintiff to Fannie Mae's claims.  Pursuant to Mass. R. Civ. P. 25 (titled "Substitution of parties") part (c) (titled "Transfer of interest"):  "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."  The rule thus provides procedural options for the sake of convenience; "[a]n order of joinder [under rule 25(c)] is merely a discretionary

---

[17] The motion judge separately concluded that Cardoso should be permitted to intervene under rule 24 (b).  Although we need not reach that question, on the record before us it appears unlikely that the judge's decision constituted an abuse of discretion.

determination by the trial court that the transferee's presence would facilitate the conduct of the litigation."  Styller v. Zoning Bd. of Appeals of Lynnfield, 487 Mass. 588, 594 (2021), quoting 7C C.A. Wright, A.R. Miller, & M.K. Kane, Federal Practice and Procedure § 1958 (3d ed. 2021) (discussing Fed. R. Civ. P. 25[c], which is substantially identical to Mass. R. Civ. P. 25 [c]).  A decision under rule 25 (c) does not alter the substantive rights of the parties.  See Styller, supra at 594-595, citing Citibank v. Grupo Cupey, Inc., 382 F.3d 29, 32-33 (1st Cir. 2004).  See also Shapiro v. McCarthy, 279 Mass. 425, 429-430 (1932) ("cause of action exists in legal contemplation apart from those persons who may be parties to it").

Cardoso's intervention goes hand in hand with his rule 25 joinder; it would make little sense to allow the former but not the latter in the circumstances of this case.  As for the judge's decision to order that Cardoso be joined with, rather than substituted for, Fannie Mae as a plaintiff, the presence of Branch's counterclaims seemingly compelled that choice.  Those counterclaims are premised on allegedly tortious acts undertaken by Fannie Mae, not Cardoso, and unlike Fannie Mae's claim for possession, they are unaffected by the sale of the subject property.  Thus, the classic substitution scenario -- complete replacement of Fannie Mae by Cardoso -- was not a viable option. Ordering Cardoso to be joined as a plaintiff in the possession

claim while Fannie Mae remained in the litigation as defendant to Branch's counterclaims was well within the judge's broad discretion.

3. <u>Summary judgment on Fannie Mae's claims</u>.  We turn next to an issue the Appeals Court did not reach, the propriety of entering summary judgment in favor of Fannie Mae on its claim for possession.  "We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law" (quotation and citation omitted).  <u>Pinti</u> v. <u>Emigrant Mtge. Co</u>., 472 Mass. 226, 231 (2015).

Without a valid foreclosure, Fannie Mae (and Cardoso) cannot prove the superior possessory interest supporting the judgment for possession.  Branch thus offers two categories of arguments attacking the validity of the foreclosure.  First, he argues that the foreclosure was invalid due to alleged infirmities in certain preforeclosure notices.  Second, he maintains that Pentagon lacked authority to foreclose because it was the servicer of the loan but not the holder of the mortgage note.  We conclude that entry of summary judgment was proper.

a. <u>Compliance with paragraph 22</u>.  Paragraph 22 of Branch's mortgage contains standard language that requires that, before

acceleration of the loan and sale of the property, the lender

give notice to the borrower.  Such notice must specify:

> "(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."

Branch argues that the three notices sent to him by Pentagon in

2013 and 2014 did not "strictly comply" with paragraph 22 of the

mortgage, and thus the foreclosure is void.  See Pinti, 472

Mass. at 243.  We hold that the strict compliance set out by

Pinti does not apply to the three notices, each of which

significantly antedated Pinti's release.

Massachusetts does not require judicial authorization for

foreclosures.  U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637,

645-646 (2011) (Ibanez).  Thus, "a mortgagee may conduct a

foreclosure by exercise of the statutory power of sale set out

in [G. L. c. 183,] § 21, where, as here, the mortgage itself

gives the mortgagee a power of sale and includes by reference

the statutory power."  Pinti, 472 Mass. at 232, citing Ibanez,

supra at 646.  However, before a mortgagee can exercise the

power of sale in a foreclosure, it must "first comply[] with the

terms of the mortgage and with the statutes relating to the

foreclosure of mortgages by the exercise of a power of sale."
G. L. c. 183, § 21.  Given "the substantial power that the
statutory scheme affords to a [mortgagee] to foreclose without
immediate judicial oversight, we adhere to the familiar rule
that one who sells under a power [of sale] must follow strictly
its terms" (quotation omitted).  Pinti, supra at 232-233,
quoting Ibanez, supra.  In Pinti, we extended that requirement
to the notice provisions of paragraph 22 for the first time,
holding that a foreclosure by statutory power of sale is
"invalid unless the notice of default strictly complies with
paragraph 22 of the standard mortgage" agreement.  Federal Nat'l
Mtge. Ass'n v. Marroquin, 477 Mass. 82, 82-83 (2017)
(Marroquin).

Pinti does not apply to the notices sent in this case.
Pinti's requirement of strict compliance with paragraph 22 only
applies to (1) notices sent after the date of Pinti, i.e., after
July 17, 2015, and (2) "any case where the issue was timely and
fairly asserted in the trial court or on appeal before July 17,
2015."  Marroquin, 477 Mass. at 83.  Pentagon sent each of the
notices in question well before the July 17, 2015 date of the
Pinti decision.  Nor is there any evidence in the record that
Branch "timely and fairly" asserted the Pinti issue in the trial
court or on appeal before July 17, 2015.  The proceedings here
did not begin until 2017, when Fannie Mae filed its summary

process summons and complaint in the Housing Court.
Accordingly, the Pinti standard does not apply to the notices.[18]

In the alternative, Branch argues that, even if Pinti's
strict compliance does not apply to the notices at issue, he is
nevertheless entitled to relief because he never received notice
that substantially complied with paragraph 22.  We disagree.  A
mortgagor in his position -- raising such a defect as a defense
in a postforeclosure summary process action -- is required to
show that the violation "rendered the foreclosure so
fundamentally unfair that [he or] she is entitled to affirmative
equitable relief."  U.S. Bank Nat'l Ass'n v. Schumacher, 467
Mass. 421, 433 (2014) (Schumacher) (Gants, J., concurring),
citing Bank of Am., N.A. v. Rosa, 466 Mass. 613, 621-625 (2013).
At a minimum, such a showing must include evidence of prejudice
flowing from the claimed noncompliance.  See Bank of N.Y. Mellon
Corp. v. Wain, 85 Mass. App. Ct. 498, 501 (2014).  Branch has
not, however, argued that the claimed defects in notice

_____

[18] Branch also appears to argue for the retroactive
application of Pinti because, although the notices were sent
before Pinti, the foreclosure sale auction took place on
September 14, 2016, after Pinti.  Other than suggesting that
this timing could theoretically have allowed Fannie Mae to issue
new notices that were compliant with Pinti, Branch identifies no
prejudice to him from the notices, see infra, nor does he
otherwise offer any compelling reason for us to revisit the
retroactivity issues settled in Pinti and Marroquin.  We decline
to do so.

specifically caused him any harm.  Nor does the evidence in the record establish any such harm.[19]  In sum, we discern no unfairness arising from the notices that would justify relief from foreclosure.

b.  Authority to foreclose.  Branch next argues that Pentagon could not foreclose on the property because it was the loan servicer but not the actual mortgage note holder.  We addressed this issue explicitly in Eaton, 462 Mass. at 584-586.  It is true that, in Eaton, we held that a mortgagee exercising its statutory right to foreclose pursuant to G. L. c. 244, § 14, must "hold[] the underlying mortgage note."  Id. at 584.  But we also expressly allowed that the agent of a note holder could properly foreclose:

> "There is no applicable statutory language suggesting that the Legislature intended to proscribe application of general agency principles in the context of mortgage foreclosure sales.  Accordingly, we interpret G. L. c. 244, §§ 11-17C (and particularly § 14), and G. L. c. 183, § 21, to permit one who, although not the note holder himself, acts as the authorized agent of the note holder, to stand 'in the shoes' of the 'mortgagee' as the term is used in these provisions."  (Footnote omitted.)

Id. at 586.  On the summary judgment record, Branch cannot contest that Pentagon was the authorized agent of the note

---

[19] To the extent Branch argues that the foreclosure should be undone because Pentagon failed to provide the notice required by G. L. c. 244, § 35A, those arguments fail for the same reason.  See Schumacher, 467 Mass. at 433 (Gants, J., concurring).

holder, Fannie Mae, at the time of the foreclosure.[20]  Pentagon consequently had authority to foreclose.

4.  Counterclaims.  Also before us is Branch's appeal from the dismissal of his counterclaims following Fannie Mae's motion for summary judgment.  We agree with the Appeals Court's reasoning on, and treatment of, those claims, and need not address them at length here.  In brief, even viewing the summary judgment record in the light most favorable to him, Branch provided no evidence to support his allegations that Pentagon agreed to delay foreclosure or accept less than the full loan payoff amount.  See Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974) ("an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial").  As Branch's counterclaims for promissory estoppel and negligent misrepresentation were premised on these alleged promises, entry of summary judgment and dismissal of the counterclaims was proper.[21]

---

[20] Nor can Branch contest that Pentagon's attorney was authorized to act on Pentagon's behalf at the foreclosure sale.

[21] We also agree with the Appeals Court that Branch has waived his right to pursue his arguments regarding counterclaims for violation of G. L. c. 244, § 35C, and retaliation because he failed to adequately argue them before the Housing Court.  See

Conclusion.  As we conclude that the appeal is not moot, we affirm the order allowing Cardoso's intervention and joining him as a plaintiff in Fannie Mae's original claim.  We further affirm entry of summary judgment as to Fannie Mae's claim for possession, and entry of summary judgment dismissing Branch's counterclaims against Fannie Mae.

So ordered.

---

Chelsea Hous. Auth. v. McLaughlin, 482 Mass. 579, 584 (2019), citing Nelson v. Adams USA, Inc., 529 U.S. 460, 469 (2000) ("[waiver] principle . . . requires that the lower court be fairly put on notice as to the substance of the issue"). Likewise, as did the Appeals Court, we conclude that Branch's arguments regarding his G. L. c. 93A counterclaim and his request for further discovery are insufficient under Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019).